NO. 07-02-0485-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 12, 2003
_____

GEMA PUGA,

Appellant

v.

VICTOR CHAVEZ, M.D.,

Appellee
_____

FROM THE 99th DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,370; HON. MACKEY HANCOCK, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Gema Puga (Puga) appeals from a final summary judgment entered in favor of Victor Chavez, M.D. (Chavez). Two issues are presented for review. The first concerns the purported failure of Chavez to address Puga's cause of action for simple negligence in his motion for summary judgment. The second issue implicates Puga's claim sounding in premises liability. She contends that material issues of fact exist regarding whether

Chavez controlled the area in question and whether ice in a parking lot creates an unreasonable risk of harm. We affirm the judgment.

## *Background*

Puga, an employee of Chavez, slipped on a patch of ice while leaving work for lunch. The ice formed after a heavy snow fall several days earlier and was located near her car in a parking lot adjacent to Chavez' office and property. Though it is undisputed that Chavez did not own that portion of the lot where Puga fell, she nonetheless contended that he exercised control over it and, therefore, was responsible for ameliorating dangerous conditions existing on it. The presence of ice was one such condition, according to Puga. Similarly undisputed is that both Puga and Chavez knew that ice was present in the lot.

Puga sued Chavez and the owner of the lot and asserted two causes of action against her employer.[1] One involved Chavez' purported negligence in failing to provide her a safe place to work. The other sounded in premises liability; that is, Puga contended that Chavez breached the duty of care owed his invitees, such as Puga, by failing to warn of and remove the ice. Chavez answered the petition and subsequently filed a motion for summary judgment. Through the latter, he argued that 1) Puga "was not acting within the course and scope of her employment when the accident occurred, nor . . . in furtherance of any employment related purpose" since "she was merely going to lunch at noon," 2) Chavez did not control or possess that portion of the lot where Puga fell, 3) the condition

---

[1]The lot owner apparently settled with Puga and is not a party to this appeal. Thus, we limit our discussion of the causes to those asserted against Chavez.

2

did not pose an unreasonable risk of harm, 4) Puga's injuries were not proximately caused by Chavez, 5) no evidence exists regarding any element of Puga's premises liability claim, and 6) no evidence exists to support the award of exemplary damages.

The trial court granted the motion of Chavez. In doing so, it did not specify any particular ground upon which it relied.

### *Standard of Review*

The standard applicable to reviewing the entry of traditional and no-evidence summary judgments is well-settled and need not be reiterated. Instead, we cite the parties to *Kimber v. Sideris,* 8 S.W.3d 672, 675 (Tex. App.--Amarillo 1999, no pet.) for their explanation.

### *Issue One — Simple Negligence Claim Unaddressed*

Puga initially argues that Chavez' motion for summary judgment failed to address both causes of action alleged in her live pleading. Again, those causes involved simple negligence and a premises claim. According to Puga, the motion addressed only her cause of action sounding in premises liability. And, because the other went unmentioned, the trial court could not have considered or rejected it via the summary judgment. We overrule the issue for several reasons.

First, we entertained the appellate contentions of Puga at oral argument. During that argument, her counsel stated that he and his client no longer wished to contend that

3

the summary judgment motion failed to address both causes of action. We construe this as an intentional and knowing waiver of the first point.

Second, even if the issue was not waived, we remain obligated to overrule the issue for Chavez' motion did indeed address both causes of action. As illustrated in the motion itself, he asserted that he was not liable to Puga because Puga was outside the scope of her employment when she encountered the ice and fell. Logically, that ground could only pertain to Puga's claim of simple negligence. With regard to that claim, she posited that Chavez was negligent because he failed to provide her with a safe place to work.[2] It does not matter whether one who sues on the theory of premises liability had an employment relationship with the alleged tortfeasor and was outside the scope of that relationship when the injury happened. Rather, liability is dependent upon the tortfeasor's ownership or control of the property, knowledge or potential knowledge of a dangerous condition, and failure to act while having the requisite knowledge. *See Meeks v. Rosa*, 988 S.W.2d 216, 217 (Tex. 1999) (generally describing the duty of care owed by one who controls property to a business invitee utilizing the property). On the other hand, the existence of an employment relationship and whether the complainant acted within its scope is pertinent to a claim sounding in negligence due to the failure to provide an employee a safe place to work. So, we cannot but read Chavez' ground about Puga being outside the scope of her employment when she fell as attacking her claim of simple negligence.

---

[2]According to Puga, Chavez breached his duty to provide a safe place to work by 1) failing to provide her with a parking space free of ice and snow, 2) failing to enact a policy requiring his employees to park on land he owned, and 3) requiring his employees "to work during icy weather when he knew or should have known that he could not provide a parking space . . . which would allow safe access from plaintiffs [sic] vehicle to his business."

Finally, Puga does not assert on appeal that the trial court could not have rejected her negligence claim on the ground that she was outside the scope of her employment when the accident occurred. Indeed, that contention is addressed nowhere in her appellate brief. This is fatal given that the trial court did not specify the particular ground upon which it relied in granting the summary judgment. When attempting to reverse a summary judgment when multiple grounds supporting such relief are alleged in the motion and none are expressly mentioned by the trial court as the catalyst for its judgment, the appellant must attack each ground on appeal. *Star-Telegram, Inc. v. Doe.,* 915 S.W.2d 471, 473 (Tex. 1995). That is, it must illustrate why none support the trial court's judgment. *Id.* Because Puga did not address the ground involving whether she was within the scope of her employment when the injury occurred, she did not carry her burden on appeal.

### Issue Two — Premises Liability and the Purported Existence of Fact Questions

Next, we consider Puga's second and last issue. Through it, she asserts that material issues of fact existed which prevented the court from granting the motion. We overrule the issue.

As previously mentioned, it is undisputed that Chavez did not own the property on which Puga fell. Nevertheless, Puga argues that one who occupies property of another may have a duty to use ordinary care to keep lands adjacent to his property in a reasonably safe condition and that Chavez incurred that obligation *viz* the property on which she fell. Admittedly, such a duty may arise. However, to the extent that it does, the duty exists only in relation to property over which the defendant exercises actual control.

5

*Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911-12 (Tex. 1996); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (1993). According to the Supreme Court, the "relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *County Of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). Furthermore, the type of control contemplated is that inherent in the ability to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the lands. *See Thornhill v. Ronnie's I-45 Truck Stop, Inc.*, 944 S.W.2d 780, 788 (Tex. App.--Beaumont 1997, writ dism'd by agr.) (defining the word "control" when used in relation to controlling premises "as 'the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee'").

Here, Puga believes that sufficient evidence of control existed because Chavez and his employees had an "'understanding' that they park on the east side of the building which is not owned by Chavez" and Chavez complained to the lot's owner that others were parking in that same area. With regard to the "'understanding,'" it consisted of Chavez stating, in his deposition, that:

> . . . I don't think I have ever in any way or another told patients where to park --I mean my employees where to park. I think it's kind of an *understanding* that they normally park on the east side of the building. [Emphasis added].

Furthermore, Puga testified that though Chavez told her to park "behind the building," he did not instruct "her of any need to park in a certain spot behind" it. From evidence indicating that Chavez may have told one or more of his employees where to park, one

6

cannot reasonably infer that Chavez exercised, attempted to exercise, or intended to exercise control of the property on which they parked. Indeed, it would be irrational to conclude that just because someone tells another to park on a public street that the declarant is purporting to regulate, manage, oversee, govern, or otherwise control the public street in a manner sufficient to obligate him to make that street safe for all who may traverse it. Similarly irrational is the conclusion that because a mother tells her son to park in front of a particular store at a local shopping center, the mother is controlling the lot to which she alluded. This is no less true when an employer tells his employees to park somewhere in a neighboring parking lot owned by someone else and apparently available for parking. In each instance, the party directing the conduct is doing just that, directing conduct, not exercising control over the realty on which they may eventually park. More is needed to evince control over the property itself.

In short, Puga is confusing access with control. That someone may have access to property does not alone evince control of the property. If this were not true then the logical result of equating access with control would lead to an untenable outcome. For instance, in most claims involving premises liability, the claimant undoubtedly had access to the premises; if not, then they most likely would not have been injured while on it. Now, if access evinced control then one could reasonably deduce that the claimant controlled the property which caused the injury. So, in having access to, and thus control over, the property, it could be said that the claimant is responsible for the breach that caused his own injuries. Surely that is not a result which a claimant would countenance.

As to the evidence of Chavez supposedly complaining about some tenant of the landowner parking in the lot, the hearsay testimony alluded to by Puga actually illustrates

7

that an employee of Chavez told the tenant to move his vehicle because it was in Chavez' parking area. The tenant then complained to the landowner. In response, the landowner inspected the area and told the tenant "to just tell them to move their cars, we didn't want them over there." Absent from this excerpt, however, is any evidence illustrating who that employee was, when the event occurred in relation to Puga's fall, on whose directive, if any, the employee acted, whether it was within the scope of the employee's duties to do that which he or she did, or whether the area in question was even the area in which Puga fell. Given this lack of evidence tying Chavez to the incident or the property to the spot at which Puga fell, one cannot reasonably infer that it connotes effort on the part of Chavez to restrict, regulate, manage or otherwise control the property on which Puga fell.

Finally, to the extent Puga cites *Wal-Mart Stores, Inc. v. Alexander* as support for her position, we find the case inapposite. There, Alexander stumbled over a ridge at the base of a concrete ramp leading from the parking lot to Wal-Mart's store. Though Wal-Mart had no contractual right to occupy or control the property on which the ramp was located, it nonetheless built the ramp to facilitate access to the store. Since it built the ramp on its own initiative and at its own expense, Wal-Mart assumed actual control over the ramp and the area on which it lay, according to the Supreme Court. *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d at 325. Therefore, it had the duty to cure dangerous conditions caused by it and posed to its customers. *Id.* at 324-25. Here, nothing of record suggests that Chavez built or altered the parking lot in general or the area on which Puga fell. Nor does the evidence purport to suggest that he did anything that caused or facilitated the dangerous condition (ice) to arise at that particular locale. So, because the

8

circumstances that triggered Wal-Mart's liability in *Alexander* are not present here, *Alexander* is not dispositive of the outcome here.

In sum, there exists no evidence of an element necessary to Puga's claim of premises liability. That element is actual control over the property on which she fell. And, because of this, Chavez was entitled to judgment as a matter of law. Furthermore, this relieves us from having to address her other contentions purportedly illustrating that summary judgment was improper.

Having overruled Puga's issues, we affirm the summary judgment of the trial court.


Brian Quinn
Justice